IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAMONA MILAM, individually and on behalf of themselves and all others similarly situated, | ) ) ) | |
| *Plaintiff*, | ) ) | No. 24 C 317 |
| v. | ) ) | Hon. Virginia M. Kendall |
| SELENE FINANCE, LP, | ) ) ) | |
| *Defendant*. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

On April 2, 2024, Plaintiff Ramona Milam brought an Amended Complaint against Defendant Selene Finance, LP for claims arising under the Fair Debt Collection Practices Act (FDCPA) and the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). (Dkt. 13); 15 U.S.C. § 1692; 815 ILCS 505/1. Milam also brought a state law claim of negligent misrepresentation. (*Id.*) Selene Finance now moves to dismiss the Amended Complaint for failure to state a claim. (Dkt. 16). For the following reasons, the motion to dismiss [16] is granted.

## BACKGROUND

This case concerns Defendant Selene Finance LP's alleged use of unfair debt collection practices when collecting upon residential mortgage loans. Plaintiff Ramona Milam owns a residential home in Chicago, Illinois. (Dkt. 13 ¶ 13). In 2005, Milam executed a mortgage in favor of the lender HBSC Mortgage Services, Inc. for her home. (*Id.* at ¶ 14). Selene Finance is a mortgage servicer for residential mortgage loans. (*Id.* at ¶ 21). In July 2021, Selene Finance acquired the servicing rights for Milam's mortgage loan, which at the time was in default. (*Id.* at

1

¶¶ 18–19). Milam alleges that Selene Finance is neither the lender, assignee, nor successor in interest of her mortgage. (*Id.* at ¶ 16).

After Milam's loan became more than 45 days delinquent, Selene Finance sent her an "IL Final Letter." (*Id.* at ¶ 25). Selene Finance sends the IL Final Letter each time an Illinois loan it services becomes at least 45 days delinquent. (*Id.* at ¶ 27). The IL Final Letter informs the borrower that their loan is in default and the amount they are past due. (Dkt. 13-1 at 2). For example, for a loan in default as of March 1, 2023, Selene Finance sends an IL Final Letter to the borrower on April 17, 2023 stating in relevant part:

> To cure this default, you must pay all amounts due under the terms of your Note and Security Interest[.] . . . The total amount you must pay to cure the default stated above must be received by 05/22/2023 [35 days later]. Failure to cure the default on or before the date specified may result in acceleration of the sums secured by the Security Interest, sale of the property and/or foreclosure by judicial proceeding and sale of the property.

(*Id.*) Selene Finance sends the IL Final Letter pursuant to Milam's mortgage, which states in relevant part:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration . . . If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.

(Dkt. 16-2 at 14, § 22). Milam's mortgage also contains a notice and cure provision that states:

> Neither Borrower nor Lender may commence, join, or be joined in any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with

>   the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Dkt. 16-2 at 13, § 20). Further, Milam's mortgage allows for "successor and assigns of Lender" to enforce the mortgage agreement. (Dkt. 16-2 at 11, § 13).

Milam alleges that the IL Final Letter makes a false and coercive threat to accelerate her loan, creates a false sense of urgency, and causes "emotional distress and informational harm." (Dkt. 13 ¶¶ 29, 35, 38–39, 60). Further, Milam alleges that the language threatens and intimidates borrowers into making payments to avoid acceleration and foreclosure. (*Id.* at ¶ 5).

Milam notes that the IL Final Letter "*technically* complies with the Security Instrument." (*Id.* at ¶ 36) (emphasis in original). Even so, it is a "material misstatement of [Selene's] intentions" because "upon information and belief" Selene "will not accelerate borrowers' loans and proceed to foreclosure" even if the borrower (1) fails to make a payment equal to the default amount; and (2) fails to make any payments coming due during the notice period. (*Id.* at ¶¶ 37, 42). In fact, Milam alleges that Selene Finance "maintains a practice" of not accelerating loans that are fewer than 120 days delinquent. (*Id.* at ¶¶ 43–46). By stating in the IL Final Letter that the recipient must make a "full payment of the default amount due" to avoid acceleration, Selene Finance causes borrowers to believe they will lose their homes, presents borrowers with a false ultimatum, threatens consumers, and causes borrowers to "send additional money to Selene" that they could have used on other necessary purchases. (*Id.* at ¶¶ 43, 47–54). Further, the Amended Complaint alleges upon information and belief that Selene Finance engages in their conduct "knowingly, intentionally, and purposefully" to compel borrowers to pay money to Selene. (*Id.* at ¶ 56).

Milam brought claims against Selene Finance alleging violation of the FDCPA, § 1692(e) (Counts I–III) and § 1692(f) (Count IV); the ICFA, 815 ILCS 505/1 (Count V); and negligent misrepresentation (Count VI). (*Id.* at ¶¶ 78–240). Milam also alleges that Selene Finance sent

3

hundreds of other Illinois-based borrowers the IL Final Letter, forming a class of similarly situated individuals sharing common questions of law and fact in the adjudication of culpability and the assessment of damages. (*Id.* at ¶¶ 61–77). Selene Finance now moves to dismiss the Amended Complaint in full for failure to state a claim and failure to comply with the mortgage's notice and cure provision. (Dkt. 16).

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570 (7th Cir. 2023) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)).

For claims sounding in fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to "state with particularly the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, a plaintiff must "describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.' " *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). The Court also considers "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper

4

judicial notice," so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). To the extent an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence. *Id.*

## DISCUSSION

### I. Notice and Cure Provision

Selene Finance first argues that Milam's Amended Complaint should be dismissed due to failure to comply with her mortgage's required notice and cure provision. (Dkt. 16 at 6–7). In response, Milam construes the provision as inapplicable because (1) she is not alleging a breach of contract, but rather "independent" claims; and (2) Selene Finance is not a lender, assignee, or successor in interest to her mortgage. (Dkt. 19 at 3–6).

The Court addresses first the threshold issue of whether Selene Finance is a "successor and assign[] of [the] Lender" such that they may enforce provisions of the mortgage. (*See* Dkt. 16-2 at 11, § 13). Rather than confront the commonsense conclusion that a loan servicer is an "assign" under the mortgage, Milam rests on her allegation in the Amended Complaint that "Selene is neither the current lender, an assignee, or successor in interest" of her mortgage. (Dkt. 13 at ¶ 16). Milam further encourages the Court to find Selene Finance's status to be an outstanding issue of fact. Here, the Court considers documents referenced in the Amended Complaint and need not accept Milam's pleaded legal conclusion regarding Selene Finance's status. *See Phillips*, 714 F.3d at 1019–20; *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 825 (7th Cir. 2018) ("[E]ven at the motion to dismiss stage, [courts] are 'not obliged to accept as true legal conclusions or unsupported conclusions of fact.'" (quoting *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006)).

Milam's mortgage defines "Lender" as HSBC Mortgage Services Inc., (Dkt. 16-2 at 2), who then assigned, sold, or transferred the mortgage to US Bank, (Dkt. 13 ¶ 15; Dkt. 16-1). Selene Finance then acquired the servicing rights for the mortgage in July 2021. (Dkt. 13 ¶ 18). In addition, § 20 of the mortgage is consistent with Selene Finance's representation that it is an assign. (Dkt. 16-2 at 12, § 20) (defining "Loan Servicer" as the entity "that collects Periodic Payments due under the Note, this Security Instrument, and Applicable Law"). Along with these facts, the Court finds such language in the mortgage assigns the loan servicer an "identifiable interest" in the mortgage; or in other words, an "assignment." *See Rodriguez v. Rushmore Loan Mgmt. Servs. LLC*, 2019 WL 423375, at *5 (N.D. Ill. Feb. 4, 2019) (quoting *Illinois Tool Works, Inc. v. Comm. and Indus. Ins. Co.*, 962 N.E.2d 1042, 1048 (Ill. App. Ct. 2011)). And pursuant to § 13 of the mortgage, all "covenants and agreements of this Security Instrument shall bind . . . and benefit the successors and assigns of Lender," granting Selene Finance the ability to enforce the notice and cure provision. (Dkt. 16-2 at 11, § 13).

In addition to the plain text of the mortgage, the Court finds persuasive the reasoning by multiple courts in this Circuit explicitly finding that loan servicers are assignees of the Lender's servicing rights and thus able to enforce the notice and cure provision in the mortgage. *See Rodriguez*, 2019 WL 423375, at *5; *In re O'Flynn*, 654 B.R. 296, 312 (Bankr. S.D. Ind. 2023), *report and recommendation adopted in part, rejected in part sub nom. O'Flynn v. PHH Mortg. Corp.*, 2024 WL 2803258 (S.D. Ind. May 31, 2024); *Bandele v. Wirbicki L. Grp., LLC*, 2021 WL 2105020, at *6 (N.D. Ill. May 25, 2021); *Harrington v. Fay Servicing, LLC*, 2019 WL 4750140, at *3 (N.D. Ill. Sept. 30, 2019) (accepting that a loan servicer was an assignee where plaintiff did not challenge defendant's designation as such); *see also Giotta v. Ocwen Loan Servicing, LLC*,

6

706 F. App'x 421, 422 (9th Cir. 2017); *Charles v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 950968, at *4 (S.D. Fla. Mar. 14, 2016).

Second, Milam argues that her claims "exist independent[ly]" of the mortgage contract since she does not assert a breach of contract. To circumvent the notice and cure provision, Milam states she is not contesting "Selene's authorization to service the debt, the assessment of any fees pursuant to a contractual provision, or an incorrect or unlawful interpretation of any contract provision" but rather Selene Finance's "false representations in its letters" and misleading "intentions." (Dkt. 19 at 4).

The Court finds Milam's characterization unpersuasive. Here, the notice and cure provision applies to "any judicial action . . . that arises from the other party's actions pursuant to this Security Instrument *or* that alleges that the other party has breached any provision of . . . this Security Instrument." (Dkt. 16-2 at 13, § 20) (emphasis added). This first phrase of this sentence covers "any judicial action" that "arises from" another's actions pursuant to the mortgage and is broad in scope to squarely encompass Milam's claims. Contrary to Milam's belief that she is only subject to the notice and cure provision if she alleges breach of contract, the provision's language regarding breach of contract is disjunctive, signaling that a breach of the mortgage is another independent circumstance covered by the notice and cure provision. *See CaramelCrisp, LLC v. Putnam*, 2023 WL 422892, at *3 (N.D. Ill. Jan. 26, 2023) ("Ordinarily, the word 'and' should be read as conjunctive and 'or' should be read as disjunctive." (citing *Chicago Land Clearance Comm'n v. Jones*, 142 N.E.2d 800, 803 (1957)); *see also Sharp v. Bank of Am., N.A.*, 2020 WL 1543544, at *4 (N.D. Ill. Mar. 31, 2020) (explaining the interpretation of "or" under Illinois law).

7

Moreover, it is the mortgage contract itself that authorizes Selene Finance to give Milam notice of possible foreclosure or acceleration. Specifically, Selene Finance must send a notice to a borrower in default consisting of:

> (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specific in the notice *may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceedings and sale of the Property.*

(*See* Dkt 16-2 at 14, § 22) (emphasis added).

The mortgage specifically authorizes Selene Finance at its option to accelerate and foreclosure without further demand. (*Id.*) Therefore, Milam's claims with respect to sending the IL Final Letter and the language utilized clearly "arise[] from" Selene Finance's actions pursuant to the mortgage and are subject to the notice and cure provision. Though the parties dispute under what circumstances Selene Finance can foreclose and accelerate the mortgage loan, that dispute ultimately "arises from" actions that Selene Finance took pursuant to and arising from the mortgage. *See Rodriguez*, 2019 WL 423375 at *2.

In response, Milam cites non-binding case law, primarily relying on *Harrington v. Fay Servicing, LLC*, to argue that claims arising independently from the mortgage contract are not subject to the notice and cure provision. 2019 WL 4750140, at *4 (N.D. Ill. Sept. 30, 2019). In *Harrington*, the plaintiff brought FDCPA and ICFA harassing and unfair collection claims based on a mortgage servicer's series of visits to his home. *Id.* at *4. The court found relevant that plaintiff's "harassment" claim could in no way be characterized as a violation of or concerning the language in the mortgage contract. *Id.* It noted, however, that a "misstatement or unlawful finance charge where the lender acted based on the mortgage agreement and the harm can be addressed by simply deleting the error" could have constitute a different outcome. *Id.* at *5.

8

The Court finds Milam's case sounds more in the register of *Rodriguez*, *Michael*, and *Wortman* than *Harrington*. In *Rodriguez v. Rushmore Loan Management Services LLC*, the court analyzed the existing legal landscape on this issue and "[came] down on the side of enforcing the notice and cure provision in cases where the plaintiff brings a statutory claim that is based on actions that the defendant took pursuant to the plaintiff's mortgage." 2019 WL 423375 at *4. There, the plaintiff alleged the defendant violated the FDCPA by threatening to impose late fees that could not be legally imposed. *Id.* at *2. The court concluded that although the parties disagreed whether the late fees were allowed pursuant to the mortgage, the dispute arose from the defendant's action pursuant to the mortgage—namely, adding late fees to the amount that defendant told plaintiff would be due. *Id.* at *3. Similarly, in *Michael v. CitiMortgage, Inc.*, Judge St. Eve interpreted a substantially similar notice and cure provision to the one here and found that the FDCPA claim must be dismissed where it arose from the mortgage contract. 2017 WL 1208487 (N.D. Ill. Apr. 3, 2017); *see also Wortman v. Rushmore Loan Mgmt. Servs. LLC*, 2019 WL 5208893, at *4 (N.D. Ill. Oct. 16, 2019) (Kendall, J.) (dismissing with prejudice plaintiff's FDCPA claims arising from her mortgage against her loan servicer that did not comply with the mortgage's notice and cure provision); *see c.f. Bandele v. Wirbicki L. Grp., LLC*, 2021 WL 2105020, at *5 (N.D. Ill. May 25, 2021) (finding the sending of a letter to a consumer represented by counsel arose from the FDCPA, not from the mortgage).

Lastly, requiring Milam to comply with the notice and cure provision does not undermine the spirit of the FDCPA. Here, Milam's compliance with a contractual provision to potentially avoid costly litigation prior to bringing suit does not close the courthouse doors nor cause undue delay. *See Wortman*, 2019 WL 5208893, at *3; *Giotta*, 706 Fed. App'x at 422–23; *see c.f. Harrington*, 2019 WL 423375 at *5 (given the circumstances of the harassment claims predicated

9

upon past visits to plaintiff's home, "it is unclear what an opportunity to cure would have accomplished"). Ultimately, Selene Finance acted based on the mortgage agreement—specifically, § 22—in sending the IL Final Letter, and Milam was remiss to not comply with the notice and cure provision before filing suit.

### II. Actual Damages

Though the Court finds that Milam's claims are precluded by her failure to comply with the mortgage's notice and cure provision, her ICFA and negligent representation claims would fail in any event for failure to allege damages.

Milam alleges that Selene Finance engaged in "deceptive and unfair practices" under the ICFA (Count V) and negligent misrepresentation (Count VI) through their statements in the IL Final Letter. Milam alleges she suffered damages because she "paid more money toward [her] mortgage than required to prevent acceleration and foreclosure" and she could have used that money on "other necessary expenditures." (Dkt. 13 ¶¶ 207–08, 227). Thus, by paying the full rather than partial amount necessary, Milam also suffered emotional distress. (*Id.* at ¶ 239).

The Court finds these facts insufficient to plead actual damages under the ICFA. Under the ICFA, a plaintiff must plead actual damages.[1] More specifically, for a private ICFA action, the element of "actual damages" means a plaintiff must "suffer actual pecuniary loss." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014); *Clark v. Receivables Mgmt. Partners*, 2022 WL 767149, at *5–6 (N.D. Ill. Mar. 14, 2022) (finding ICFA claims requires an actual "pecuniary loss" and collecting cases). Emotional damages alone do not suffice. *See Griffin v. U.S.*

---

[1] The elements of an ICFA claim are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) the deceptive or unfair acts occurring during a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive or unfair acts. *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (cleaned up).

*Bank Nat'l Assoc.*, 2019 WL 4597364, at *6 (N.D. Ill. Sept. 23, 2019) (holding "emotional distress, inconvenience and aggravation are not enough" to maintain an ICFA claim) (citation omitted); *see also Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 913 (N.D. Ill. 2012); *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009).

In *Camasata*, the Seventh Circuit found no actual damages under the ICFA where a plaintiff argued that advertised "sale prices" were unfair or deceptive because they were actually "regular prices" promoted to encourage a sense of "urgency" among customers. 761 F.3d at 739. The court found the plaintiff provided only "speculative and conclusory" damages under the ICFA because he did not allege that he paid more than the actual value of the merchandise, or shopped around and found the same shirts at a lower price. *Id.* An assertion that the plaintiff "could have" obtained a better price was insufficient. *Id.*

Similarly, Milam does not contend she paid more than what she legally owed under the mortgage. *See Camasata*, 761 F.3d at 739; *c.f. Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012) (finding actual pecuniary damages under the ICFA where plaintiff incurred late fees and defaulted on her loan due to defendant's deception); *Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1085 (N.D. Ill. 2018) (finding plaintiff's contention that she paid more for a product than it was worth due to a misrepresentation sufficient to plead actual damages). It is undisputed that Milam's payment to Selene Finance to avoid acceleration and foreclosure was money she contractually owed under her mortgage. Instead, Milam's assertions constitute insufficient "could haves" about how she would have used the money she legally owed but that she contends was not required to be paid *at that time* to avoid foreclosure and acceleration. The Court finds this allegation insufficient to plead actual damages. *See Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 830 (7th Cir. 2018) ("Money out of pocket is a standard understanding

11

of actual damages in contract law[,] . . . the law of fraud, and elsewhere."). In other words, Milam's completion of a pre-existing legal duty does not constitute damages. *See Leak v. Seterus, Inc.*, 2020 WL 7406792, at *6 (N.D. Ga. Jan. 29, 2020) (expressing "hesitan[ce] to determine that a misrepresentation that caused [plaintiff] to pay the full back payment on a mortgage that she knew she was liable for is an economic injury, especially because she would have continued to pay as a condition to remaining in her home"); *Williams v. Seterus, Inc.*, 2020 WL 362874, at *3 (N.D. Ala. Jan. 22, 2020) (same); *see also Country Mut. Ins. Co. v. Olsak*, 216 N.E.3d 291, 307 (Ill. App. Ct. 2022) ("The preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration as there is no detriment.").

This same analysis applies for negligent representation, whereby a plaintiff must allege damages.[2] Though Milam is correct that nominal damages could be awarded for negligence, this would only be the case if the Milam "possesses the right to damages but fails to provide a proper basis for computing those damages." (Dkt. 19 at 15 (citing *Giammanco v. Giammanco*, 625 N.E.2d 990, 997 (Ill. App. Ct. 1993)). Here the Court found no actual economic injury alleged. And there is no broad duty in Illinois to avoid misrepresentations that cause only emotional harm. *See Brogan v. Mitchell International, Inc.*, 692 N.E.2d 276 (Ill. App. Ct. 1998).

### III. Class Claims and Dismissal with Prejudice

As the Court concludes that Milam has not adequately pleaded her individual claims, she cannot pursue her class claims. *See Bryant v. All Ways Auto Transp., LLC*, 2022 WL 17338295, at *6 (N.D. Ill. Nov. 30, 2022) ("Class action claims cannot be filed by class representatives who

---

[2] To state a claim for negligent misrepresentation in Illinois, the plaintiff must allege "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) (quoting *First Midwest Bank. N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327 (Ill. 2006)).

have no individual claims, because they lack standing and have no 'personal stake in the outcome.' " (quoting *O'Shea v. Littleton*, 414 U.S. 488, 493–94 (1974)).

Further, the Court may dismiss with prejudice where amendment would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (noting a court may dismiss a complaint with prejudice "[w]here it is clear that the defect cannot be corrected so that amendment is futile"). Here, providing Milam opportunity to amend her complaint would be futile because she cannot correct the defects the Court has identified with his individual claims. Therefore, the Court dismisses Milam's individual claims with prejudice, and her class claims without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Selene Finance's motion to dismiss [16] is granted. Milam's individual claims are dismissed with prejudice, and her class claims are dismissed without prejudice.

_____
Virginia M. Kendall
United States District Judge

Date: July 18, 2024

13